MARK D. ROSENBAUM (SBN 59940)
(mrosenbaum@aclu-sc.org)
DAVID B. SAPP (SBN 264464)
(dsapp@aclu-sc.org)
ACLU FOUNDATION OF SOUTHERN
CALIFORNIA
1313 W. 8th Street
Los Angeles, CA 90017
Telephone:  (213) 977-5220
Facsimile:   (213) 417-2220

HERNAN VERA (SBN 175149)
(hvera@publiccounsel.org)
LAURA FAER (SBN 223846)
(lfaer@publiccounsel.org)
BENJAMIN CONWAY (SBN 246410)
(bconway@publiccounsel.org)
PUBLIC COUNSEL
610 South Ardmore Avenue
Los Angeles, CA 90005
Telephone:  (213) 385-2977
Facsimile:   (213) 385-9089

PAULA D. PEARLMAN (SBN 109038)
(paula.pearlman@lls.edu)
SHAWNA L. PARKS (SBN 208301)
(shawna.parks@lls.edu)
SURISA RIVERS (CA SBN 250868)
(surisa.rivers@lls.edu)
DISABILITY RIGHTS LEGAL
CENTER
919 Albany Street
Los Angeles, CA 90015
Telephone:  (213) 736-8366
Facsimile:   (213) 487-2106

(Additional counsel listed on next page)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY A.; CARL C.; and MIGUEL B., by and through L.L., on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>        vs.<br><br>JON R. GUNDRY, in his official capacity, Interim Superintendent, Los Angeles County Office of Education; WILLIAM ELKINS, in his official capacity, Director, Los Angeles County Office of Education Division of Juvenile Court Schools; JESUS CORRAL, in his official capacity, Principal, Los Angeles County Office of Education Challenger Center School; and LOS ANGELES COUNTY PROBATION DEPARTMENT,<br><br>        Defendants. | CASE NO.:  Case No. CV 10-00192 GHK (FMOx)<br><br>Honorable George H. King<br><br>**Plaintiffs' Unopposed Notice of Motion and Motion for Final Approval of Class Action Settlement Agreement, Class Certification and Attorney's Fees; Memorandum of Points and Authorities in Support Thereof**<br><br>[Declarations in Support and [proposed] Order and Final Judgment filed concurrently]<br><br>Date:     May 23, 2011<br>Time:     9:30<br>Court:   650, Roybal |

1  DENNIS D. PARKER
   (dparker@aclu.org)
2  (*Pro Hac Vice*)
   LAURENCE M. SCHWARTZTOL
3  (lschwartztol@aclu.org)
    (*Pro Hac Vice*)
4  AMERICAN CIVIL LIBERTIES UNION FOUNDATION
   NATIONAL LEGAL DEPARTMENT
5  125 Broad Street, 18th Floor
   New York, NY 10004
6  Telephone:   (213) 549-2682
   Facsimile:   (213) 549-2654

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

PAGE

NOTICE OF MOTION AND MOTION ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................1

I.  Introduction ...............................................................................................1

II.  Nature of the Case and the Settlement ...................................................2

III.  Summary of Settlement Terms: Reformation of Education and Special Education at Camp Challenger and Compensatory Services.....................................................................................................4

    A.  Development and Implementation of Detailed Plans .................4

    B.  Creation of Two Entities Responsible for Development of Plans, Implementation and Monitoring .......................................4

        1.  *Technical, Compliance and Advisory Team*.....................5

        2.  *Challenger Reform Taskforce*............................................5

    C.  Discipline and Accountability for Employees at Challenger .....5

    D.  Monitoring of Camp Challenger Reforms ...................................6

    E.  Compensatory Services for Class Members ................................6

    F.  Continued Jurisdiction of the Court.............................................7

    G.  Compensation for Named Plaintiffs and Attorneys' Fees and Costs.......................................................................................7

IV.  Notice to Class Members, Objections and Opt Outs .............................8

V.  The Class Settlement Should be Approved and the Class Certified...11

    A.  The Amount Offered in Settlement Compared to Strength of Plaintiffs' Case and Risk of Further Litigation. ...................12

    B.  The Settlement is Fair, Adequate, and Reasonable Given the Information Obtained and the Quality of the Settlement Negotiations. ...................................................................................13

    C.  Counsel Believe That This Is an Exceptional Settlement.........14

    D.  Settlement Will Conserve Resources for the Government Defendants. ...................................................................................14

    E.  Reaction of Class Members to the Proposed Settlements. .......15

F.   Final Certification of the Class is Appropriate. .........................15

1.   Plaintiffs Satisfy the Requirements of Rule 23(a). .........16

i.   Numerosity ...........................................................16

ii.   Commonality .......................................................16

iii.   Typicality.............................................................17

iv.   Adequate Representation by Plaintiffs and
Class Counsel .....................................................18

G.   Certification Under Rule 23(b)(2) is Appropriate. ...................19

VI.   Class Counsel's Requested Attorney's Fees Should Be Approved....20

A.   The Negotiated Award is Reasonable under the Lodestar
Approach. ...................................................................................21

1.   The Number of Hours Are Reasonable ..........................21

2.   The Hourly Rates Are Reasonable .................................22

B.   The Attorney's Fees Award Required Under the Settlement
Is Reasonable .........................................................................24

VII. Conclusion.............................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Armstrong v. Davis,*
275 F.3d 849 (9th Cir. 2001) ........................................................16, 17

*Baby Neal for & by Kanter v. Casey*
43 F.3d 48 (3rd Cir. 1994)........................................................16

*Barrios v. California Interscholastic Federation,*
277 F.3d 1128 (9th Cir. 2002) ........................................................21

*Blake C. ex rel. Tina F. v. Department of Educ., State of Hawaii,*
593 F.Supp.2d 1199 (D. Hawai'i 2009) ........................................17

*Blum v. Stenson,*
465 U.S. 886 (1984)........................................................22

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981)........................................................12

*Comer v. Cisneros,*
37 F.3d. 775 (2d Cir. 1994) ........................................................20

*Cox v. American Cast Iron Pipe Co.,*
784 F.2d 1546 (11th Cir. 1986) ........................................................16

*Crawford v. Honig,*
37 F.3d 485 (9th Cir. 1994) ........................................................20

*DeSimone v. Industrial Bio-Test Labs, Inc.,*
83 FRD 615 (S.D.N.Y. 1979)........................................................11

*Dukes v. Wal-Mart Stores, Inc.*
603 F.3d 571 (9th Cir. 2010) ........................................................20

*Guam Soc'y of Obstetricians & Gynecologists v. Ada,*
100 F. 3d 691 (9th Cir. 1996) ........................................................23

*Handberry v. Thompson,*
446 F.3d 335 (2nd Cir. 2006) ........................................................17

*Hanlon v. Chrysler Corp.,*
150 F. 3d 1011 (9th Cir. 1998) ........................................................12, 16

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983)......................................................................20, 21

*Housing Rights Center v. Sterling,*
   2005 WL 332078 (C.D. Cal. 2005) ...................................................23

*In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.,*
   55 F.3d 768 (3rd Cir. 1995) ..............................................................11

*In re Mego Financial Corp. Securities Litigation,*
   213 F. 3d 454 (9th Cir. 2000) ...........................................................13

*In re Monumental Life Ins. Co.,*
   365 F.3d 408 (5th Cir. 2004) ............................................................20

*In re Northern District of California, Dalkon Shield, IUD Prods. Liab.Litig.,*
   693 F. 2d 847 (9th Cir. 1982) ...........................................................18

*In re Pacific Enterprises Securities Litigation,*
   47 F. 3d 373 (9th Cir. 1995) .............................................................14

*J.G. v. Douglas County School Dist.,*
   552 F. 3d 786 (9th Cir. 2008) ...........................................................15

*Jordan v. County of Los Angeles,*
   669 F. 2d 1311 (9th Cir. 1982) .........................................................18

*Ketchum v. Moses,*
   24 Cal. 4th 1122 (2001) ....................................................................22

*Missouri v. Jenkins,*
   491 U.S. 274 (1989)...........................................................................22

*Molski v. Gleitch,*
   318 F.3d 937 (9th Cir. 2003) ............................................................20

*Park, ex rel. Park v. Anaheim Union High Sch. Dist.,*
   464 F.3d 1025 (9th Cir. 2006) ..........................................................17

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air,*
   478 U.S. 546 (1986)...........................................................................21

*Robinson v. Metro-North Commuter R.R. Co.,*
   267 F.3d 147 (2d Cir. 2001) .............................................................20

*Sav-On Drug Stores, Inc. v. Superior Court*
   34 Cal. 4th 319 (2004) .........................................................................17

*Serrano v. Unruh,*
   32 Cal. 3d 621 (1982) ..........................................................................22

*Singer v. Becton Dickinson and Co.,*
   2010 WL 2196104 (S.D. Cal. 2010).....................................................19

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ...............................................................16

*Widrig v. Apfel,*
   140 F. 3d 1207 (9th Cir. 1998) ............................................................23

STATUTES

20 U.S.C. 1415(i)(3)(B) .............................................................................20

42 U.S.C.A. § 1988.....................................................................................20

Fed. R. Civ. P. 23(a)........................................................................16, 17, 18

Fed. R. Civ. P. 23(b) ............................................................15, 16, 19, 20

Fed. R. Civ. P. 23(e)........................................................................8, 11

Fed. R. Civ. P. 23(h) ......................................................................20, 24

Cal. Code Civ. Proc. § 1021.5 ...............................................................21

OTHER AUTHORITIES

1 Conte & Newberg, *Newberg on Class Actions* §3.5 (4th ed. 2009).....................16

*Manual for Complex Litigation,* §30.42 (3rd ed. 1995)...........................................14

**NOTICE OF MOTION AND MOTION TO ALL PARTIES AND THEIR
COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that on May 23, 2011 at 9:30 a.m., or as soon
thereafter as counsel may be heard in the courtroom of the Honorable George H.
King, United States District Judge, Chief Judge, at the Edward R. Roybal Federal
Building, 255 East Temple Street, Los Angeles, CA 90012, Plaintiffs hereby move
under Federal Rule of Civil Procedure 23(e) for an order (1) certifying the settlement
class pursuant to Federal Rule of Civil Procedure 23; (2) granting final approval of
the Settlement Agreement reached between Plaintiffs and Defendants Jon R. Gundry,
in his official capacity as Interim Superintendent, Los Angeles County Office of
Education; William Elkins in his official capacity as Director, Los Angeles County
Office of Education Division of Juvenile Court Schools; Jesus Corral, in his official
capacity as Principal, Los Angeles County Office of Education Challenger Center
School; and Los Angeles County Probation Department ("Defendants") as satisfying
the requirement of Federal Rule of Civil Procedure 23; and (3) awarding attorney's
fees to Class Counsel.

This motion is based upon this Notice of Motion and Motion; the
Memorandum of Points and Authorities in support thereof, the papers and supporting
declarations filed in support of Plaintiffs' motion for:  1) Preliminary Approval of
Class Action Settlement Agreement; 2) Conditional Class Certification for Purposes
of  Settlement; 3) Approval of Notice and Distribution to the Class: and 4) Setting of
a Schedule for Hearing on Final Approval ("Preliminary Approval Motion"), which
are already on file; as well as the Declarations of Shawna L. Parks, Benjamin
Conway, Mark D. Rosenbaum, David Sapp, Larry Schwartzol, Roger Granbo, Eric
Hass, Maritza Torres, Paul Landry, Jesus Corral, Dan Stormer, Barrett S. Litt,
Laurence W. Paradis, and accompanying exhibits, which are being filed concurrently
with this motion; and all papers and documents already on file in this matter.

1       Defendants do not oppose this motion.

2

3

4                          PUBLIC COUNSEL LAW CENTER

5                          DISABILITY RIGHTS LEGALCENTER

6                          ACLU FOUNDATION OF SOUTHERN

7                          CALIFORNIA

8                          AMERICAN CIVIL LIBERTIES UNION,

9                          NATIONAL LEGAL DEPARTMENT

10

11 DATED: May 9, 2011       By: _____ /s/ _____

12                                Laura Faer

13                                Public Counsel Law Center

14                                Attorneys for Plaintiffs

15                                and the Plaintiff Class

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   Introduction

On March 16, 2011, this Court granted preliminary approval to the Settlement Agreement reached by the parties, conditionally certified the class for purposes of settlement, approved the class notice and method of distribution, and set the date for the final approval hearing.  Defendants have issued notice to 3,616 class members, no class member has opted out of the class for the purpose of pursuing a separate compensatory education claim, and only one person has objected, on the grounds that she would like damages and additional compensatory education services for her son. Given the comprehensive nature of the relief provided in this historic settlement, it is not surprising that the class members are supportive.

This settlement will be transformative for the youth and staff at Challenger Memorial Youth Center ("Challenger").  Under the settlement, which was the result of lengthy negotiations between the parties, Defendants will work extensively with a team of nationally renowned experts to implement systemic program reforms in thirteen major areas at Challenger and Christa McAuliffe High School to provide required education and special education to the at risk youth who are detained there.

Importantly, the reforms will focus on leadership at Challenger, as well as sustainability, in order to ensure that the changes implemented as part of the settlement are permanent.  The experts who will work hand-in-hand with the Challenger team are some of the nation's leaders in the development of educational and rehabilitative programs for youth in juvenile detention settings.

The settlement requires a host of programmatic changes at Challenger, including creation of the Challenger Reform Taskforce, which will be responsible for providing information and feedback relevant to the reform efforts and serving as a liaison to individuals at Challenger and community stakeholders.  In addition, Defendants will develop a literacy program, including a lending library program and librarian, and a career and technical education program, services which were

1

1  previously unavailable to the youth.  Importantly, the settlement also provides for
2  compensatory education services for the youth who were detained at Challenger from
3  January 12, 2008 until the execution of the Settlement Agreement.  As a result, these
4  youth will be able to access educational and vocational services at no cost to help
5  them regain the educational ground they lost while at Challenger.  Defendants will
6  also reform Challenger's prior disciplinary and solitary confinement policies to ensure
7  as required by federal and state law.  Finally, the Settlement Agreement provides for
8  up to four years of ongoing monitoring to ensure compliance.

9      Indeed, the scope and depth of the agreed upon reforms, as well as the serious
10  commitments made by Defendants to address the alleged violations, make this
11  settlement a far superior resolution than protracted litigation of Plaintiffs' claims.  As
12  such, Plaintiffs ask this Court to finally approve the settlement as being fair,
13  reasonable, and adequate for the class and to certify the settlement class.

14  **II.    Nature of the Case and the Settlement**

15      The facts underlying this action, as well the details of the negotiations that led
16  to this Settlement Agreement, were set forth in detail in Plaintiffs' Motion for
17  Preliminary Approval.  In short, however, this action arises from the lack of minimally
18  adequate educational services received by Plaintiffs during their confinement at Camp
19  Challenger and enrollment at Christa McAuliffe High School.  Plaintiffs allege that
20  Defendants engaged in a pattern and practice of violating students' basic and
21  fundamental rights to receive appropriate educational and rehabilitative services, as
22  well as special education services.  *See* First Amended Complaint ("FAC") at ¶¶ 12-
23  16 (Dkt. No. 65).  The longstanding educational failures at Challenger have been well
24  documented.  Reports by the County of Los Angeles Probation Commission, the
25  California Corrections Standards Authority, and the Learning Rights Law Center,
26  among others, have detailed repeated denials of basic educational opportunity.  *Id.* at
27  ¶¶ 85-90. The Settlement Agreement was the result of extensive negotiations by the
28  parties, spanning approximately eight months.  *See* Shawna Parks Declaration in

1  Support of Preliminary Approval (Parks Prelim. Approv. Decl.), at ¶ 23 (Dkt. No. 60,
2  Attach. #1). In March 2010, after initial negotiations, the parties entered into a
3  stipulation which called for an interdisciplinary team of experts (hereinafter "2010
4  Review Team") to complete a site visit at Challenger, to assess the conditions at
5  Challenger, and then to develop a plan to transform the education and rehabilitative
6  program at Challenger. The parties agreed that the content of that plan would serve as
7  the basis for further negotiations to resolve the litigation. *See id.*

8      The 2010 Review Team consisted of seven members, who are recognized
9  among the nation's leading experts in the delivery of appropriate education and
10 rehabilitative services in juvenile and correctional institutions. *See id.* at ¶ 24. After
11 completing its site visit, the 2010 Review Team issued a report ("2010 Review Team
12 Report") detailing its findings regarding the conditions at Challenger and
13 accompanying proposal for reform and action plan ("Action Plan") on July 13, 2010.[1]
14 The Action Plan identified thirteen major areas for reform.[2]  Over three days in July
15 2010, members of the 2010 Review Team presented their findings and
16 recommendations to the parties, to senior administrators within LACOE and
17 Probation, and to staff and administrators at Challenger. *See id.* at ¶ 26 (Dkt. No. 60,
18 Attach. #1).

19     Thereafter, the parties resumed negotiations centered on implementing the 2010
20 Review Team Report and Action Plan. *See id.* at ¶ 27 (Dkt. No. 60, Attach. #1).
21 After multiple in-person meetings and teleconferences, the parties were able to reach
22 an agreement as to the basic terms of the Settlement Agreement, Action Plan and
23 implementation of the Action Plan. A number of additional telephone conferences,

24 ───────────────

25      [1]Because the Report was filed under seal by agreement of the parties, the details of the
report are confidential.

26
       [2]The finalized Action Plan is attached as Exhibit 8 to the Settlement Agreement. The
27 Settlement Agreement and Report were previously filed with the Court under seal. (Dkt. No. 59).
A redacted version of the Settlement Agreement that protects the named Plaintiffs' identities was
28 also filed with the Court. (Dkt. No. 55).

1  correspondences, and exchanges of settlement drafts were necessary to finalize the

2  settlement agreement. The parties also negotiated damages for Miguel B.

3        The parties reached an agreement in all substantive areas relating to the

4  educational and rehabilitative reform at Camp Challenger and Christa McAuliffe High

5  School prior to negotiating attorneys' fees. *See id.* at ¶ 28 (Dkt. No. 60, Attach. #1).

6  After resolving final details, the Settlement Agreement was signed by the last party on

7  November 8, 2010. *See id.* at ¶ 28 (Dkt. No. 60, Attach. #1).

8  **III.**      **Summary of Settlement Terms: Reformation of Education and Special**

9            **Education at Camp Challenger and Compensatory Services**

10      A. Development and Implementation of Detailed Plans

11        As discussed at length in the preliminary approval motion, *see* Memo. of Points

12  and Authorities in Support of Preliminary Approval at 8-18 (Dkt. No. 60) , the main

13  terms of the proposed class action Settlement Agreement require Defendants to reform

14  the educational and rehabilitative programs at Camp Challenger and Christa

15  McAuliffe High School by implementing a detailed action and compliance plan

16  ("Detailed Plan") in thirteen major areas. *See* Settlement Agreement ("SA") at ¶ 8

17  (Dkt. No. 55, Attach. #1).  The Detailed Plans were developed by LACOE and

18  Probation in conjunction with the Challenger Technical, Compliance, and Advisory

19  Team (explained below) and were reviewed by Class Counsel to ensure legal

20  sufficiency. *See* Parks Prelim. Approv. Decl., at ¶ 30 (Dkt. No. 60, Attach. #1).

21        In accordance with the terms of the Settlement Agreement, all of the Detailed

22  Plans have been completed and filed with the Court. *See id.,* at ¶ 30, Ex. F & G (Dkt.

23  No. 60, Attach. #5 & 6).  Pursuant to the Settlement Agreement, these plans form the

24  framework for all reform efforts at Challenger and for implementation and monitoring

25  thereafter.

26      B. Creation of Two Entities Responsible for Development of Plans,

27          Implementation and Monitoring

28        Defendants, in consultation with Class Counsel, established two entities that

1  will be responsible (together with administrators within LACOE and Probation with

2  responsibility for overseeing and managing Challenger) for developing,

3  implementing, and monitoring implementation of the Detailed Plan for each of the

4  Areas for Reform: (1) the Challenger Technical, Compliance, and Advisory Team

5  and (2) the Challenger Reform Taskforce.   SA at ¶ 9.

6                    *1. Technical, Compliance and Advisory Team*

7  The Challenger Technical, Compliance, and Advisory Team ("TCA Team"): (1) will

8  assist the administrator(s) within LACOE and Probation with responsibility for each

9  Area for Reform with implementation of the Detailed Plan; (2) monitor and ensure

10  compliance with each and every Detailed Plan; and (3) prepare progress and

11  compliance reports on Defendants' implementation of the Detailed Plans. SA at ¶ 10.

12  For the two years immediately following the execution of this Agreement, the TCA

13  Team will consist of Dr. Peter Leone and Dr. Alice Parker, who will co-chair the TCA

14  Team, and Richard Krause.  *See id.* at ¶ 11.  Defendants shall pay fees for the TCA

15  Team members up to $500,000.00, excluding expenses.  SA at ¶ 67.

16                    *2. Challenger Reform Taskforce*

17          The proposed Settlement Agreement also provides for the creation of a

18  Taskforce that will be responsible for: (1) providing information and feedback

19  relevant to the reform efforts at Challenger; (2) serving as a liaison to individuals at

20  Challenger and community stakeholders; (3) meeting with members of the TCA

21  Team and students at Challenger; and (4) writing a report two times per year on the

22  implementation of the Detailed Plans and the quality of educational and rehabilitative

23  programming available to youth detained at Challenger.  SA at ¶ 24, 31.  The Task

24  Force has now been formed, notice has been provided regarding its purposes and

25  members, and meetings have begun.  Declaration of Roger Granbo (Granbo Decl.), at

26  ¶¶ 9-13; Declaration of Jesus Corral (Corral Decl.), at ¶¶ 3-6. .

27          C. <u>Discipline and Accountability for Employees at Challenger</u>

28          The Settlement Agreement requires Defendants to implement numerous

1    measures enhancing discipline and accountability for employees responsible for the
2    education and rehabilitation of the youth at Challenger.  SA ¶ 38.  It also requires
3    Defendants to take a number of steps to ensure professionalism and compliance with
4    the terms of this Agreement by its staff at Challenger, in addition to any relevant
5    requirements outlined in the Detailed Plans. *See* SA at ¶¶37-39; *see* Gores Decl. at ¶2-
6    3 (Dkt. No. 60, Attach. #13); Randolph Decl. at ¶¶2-3 (Dkt. No. 60, Attach. #12);
7    Granbo Decl. at ¶ 14; Declaration of Paul Landry (Landry Decl.), at ¶ 4, Corral Decl.,
8    at ¶ 7.

9              D. Monitoring of Camp Challenger Reforms

10             The members of the TCA Team shall prepare and submit reports, to the parties
11   and the Court, detailing Defendants' progress in implementing and complying with
12   the Detailed Plans on a quarterly basis for the first two-year period following the
13   Court's final approval, and thereafter the reports shall be no less than twice per year.
14   SA at ¶ 20.

15             E. Compensatory Services for Class Members

16             All eligible Class Members will be awarded and able to access compensatory
17   education services using research-based interventions from approved providers based
18   on the formula developed by Dr. Leone, a member of the TCA team.  SA at ¶ 41.
19   Under the formula, students who were at Challenger, but who have not yet received a
20   high school diploma or GED will receive between 40 and 160 hours of services.
21   Parks Prelim. Approv. Decl., Exh. H.  Class members who complete a minimum of 40
22   hours of services, will receive an e-reader with two electronic books of his choice
23   downloaded.  Any class members who have received a diploma or GED will receive
24   five hours of career and/or educational counseling.  These students can also receive an
25   e-reader upon completing those five hours of services.  SA at ¶ 41.

26             Upon final approval, members of the settlement class will receive notice
27   indicating the specific Compensatory Service Package to which they are entitled and
28   providing contact information for the Providers that they can contact to obtain

                                             6

1  compensatory services. *Id.* at ¶ 45. A toll-free hotline, paid for by Defendants, with
2  operators who can provide assistance in English and Spanish, will allow eligible
3  settlement class members to call to receive assistance in determining which Provider
4  serves the area in which the member of the Settlement Class lives, and to address any
5  difficulty members of the Settlement Class encounter accessing the Compensatory
6  Service Package. *See id.,* at ¶ 46.

7        F. Continued Jurisdiction of the Court

8        The Settlement Agreement provides that the Court will retain jurisdiction to
9  interpret and enforce the specific provisions of the Agreement; to supervise the
10  administration and distribution of the resulting Compensatory Services; and to hear
11  and adjudicate any dispute or litigation arising from the interpretation or application of
12  this Agreement or the issues of law and facts asserted in the lawsuit. *See id.* at ¶ 77.
13  The Court's jurisdiction will continue for four years from the date the Settlement
14  Agreement was executed, unless the parties stipulate that the Court's jurisdiction
15  should terminate earlier or the TCA recommends termination based on a finding of
16  full compliance at the end of year three. *See id.* at ¶ 78.

17        Four years after the Court grants final approval of this Agreement, the parties
18  will submit to the Court a status report, regarding the need for the Court to retain
19  jurisdiction for an additional period of time to ensure the reforms required under this
20  Agreement are fully implemented; if the Court is persuaded, by a preponderance of
21  the evidence, based on the parties' statements or the accompanying TCA Team's
22  report, of the need for continued jurisdiction to ensure full implementation of the
23  reforms, jurisdiction shall terminate. SA at ¶ 79.

24        G. Compensation for Named Plaintiffs and Attorneys' Fees and Costs

25        As part of the Settlement Agreement, the three Named Plaintiffs in this action
26  will receive separate compensatory education packages. SA at ¶ 49-51 & Ex. 9. In
27  addition, Defendants have agreed to pay Miguel B. $10,000 in damages, and on
28  March 16, 2011, the Court granted the Motion to Approve Minor's Compromise

1 related to these damages. SA at ¶ 52. The proposed settlement <u>does not</u> affect any

2 Class Member's right to bring a claim for damages against any Defendant or to bring

3 special education claims for relief regarding the related services not covered by the

4 Agreement. *Id.* at ¶ 83. Defendants have agreed to pay attorneys' fees and costs in

5 the amount of $325,000.00, and, as discussed *infra* at Section V, Class Counsel

6 request the approval of this negotiated fee amount, which is substantially below Class

7 Counsel's lodestar.

8 **IV.    Notice to Class Members, Objections and Opt Outs**

9        On March 16, 2011, this Court preliminarily found that the requirements of

10 Federal Rules of Civil Procedure 23(e) had been met in this case, conditionally

11 certified the class for purposes of settlement, and preliminarily approved the class

12 settlement. (Dkt. No. 75). This Court also entered an order that the notice prepared

13 by the parties and amended by this Court be distributed pursuant to the terms of the

14 Settlement Agreement. (Dkt. No. 76).

15        Defendants mailed notice to the class in Spanish and English via U.S. mail

16 using the notice approved by the Court, which is attached as Exhibits A and B to the

17 Declaration of Benjamin Conway in support of this motion. *See also* Granbo Decl.,

18 Exhs. A & B (same). This notice was sent by U.S. Mail on March 26, 2011 to 3,616

19 individuals using the format required. Granbo Decl., at ¶ 2, 4, 5. The notices for the

20 18 and older class members were addressed to the class member. The notices for the

21 under 18 class members were addressed to each class member in care of his

22 parent/parents. Granbo Decl., at ¶ 3, 4.

23        To identify all class members, LACOE and Probation searched their

24 respective databases and developed a joint list of class members with each of their

25 last known addresses. It was determined that Probation had the most current

26 information. In the event that Probation did not have an address, the address from

27 LACOE was used. The final list with the most current contact information was sent

28 to Class Counsel. Granbo Decl., at ¶ 3; Landry Decl., at ¶ 5.

From the 3,616 individuals initially contacted by mail, 856 of notices were returned to sender due to address changes. Defendants then hired a locator service, and the locator service found current addresses for 239 of the 856 class members whose notices were returned to sender. Defendants resent notices to 239 class members on May 9, 2011 using overnight mail in lieu of first class mail, due to the delay in mailing the second round of notices, which should have been sent on May 6, 2011 pursuant to this Court's order. Granbo Decl., at ¶ 7.

Defendants also: (1) mailed the class notice to the school districts located in Los Angeles County, to the Los Angeles County Jail, and to the California Department of Corrections and Rehabilitation, (2) posted the notice in each classroom at Camp Challenger; (3) sent the notice to the community organizations provided to them by Class Counsel; and (4) posted the notice on their homepages. *See* Declaration of Eric Hass, at ¶ 2, 3; Landry Decl., at ¶ 2, 3; Torres Decl., at ¶ 2; Granbo Decl., at ¶¶ 6, 8; Corral Decl., at ¶ 8; *see also* SA at ¶ 61. Class Counsel also posted the class notices on their websites and provided class notice via email to public defenders, juvenile justice law clinics, and education attorneys and advocates in Los Angeles County who represent current and former Probation youth. Conway Decl. at ¶¶ 5-7; Declaration of Shawna L. Parks in Support of Final Approval (Parks Final Approv. Decl.) at ¶ 5; Declaration of Mark Rosenbaum (Rosenbaum Decl.) at ¶ 18; Declaration of Laurence M. Schwartztol ("Schwartztol Decl.") at ¶ 14.

The class was provided with two avenues for providing objections or comments regarding the proposed settlement: mailing a written objection *or* by calling a toll free number. *See* SA at ¶ 62. From a review of the transcriptions, Class Counsel believe that only one objection has been received. On behalf of her son, Ms. AG objected by leaving two messages on the toll free hotline, stating that she would like to receive additional compensatory services for her son in the same amount as the Named Plaintiffs and that she thought her son should receive monetary damages. Declaration of David Sapp (Sapp Decl.) at ¶ 8; Parks Final Approv. Decl. at ¶ 4. On April 20,

1  2011, Class Counsel David Sapp called Ms. AG to confirm that her voice messages

2  had been received and would be provided to the Court.  Sapp Decl. at ¶ 8.  Mr. Sapp

3  further explained that the message left on the hotline operated only as an objection;

4  that, if she desired, Ms. AG also had the right to opt out of the settlement and pursue

5  individual compensatory services claims by mailing an opt out letter to the address

6  provided in the class notice; and that the settlement would not affect her son's ability

7  to pursue claims for monetary damages or related services, i.e., that the only claims

8  waived under the settlement were for compensatory education and transition services.

9  *Id.*

10       In addition to Ms. AG, three other individuals left messages on the toll-free

11  hotline, although none of those messages stated that the caller objected to the

12  proposed settlement.  Parks Final Approv. Decl. at ¶ 3, 4 & Ex. A.  Counsel

13  transcribed all messages left on the toll-free objection line to date, and they have been

14  filed with the Court.  *See id*.  Any additional messages received prior to May 20 will

15  also be transcribed and provided to the Court.  *See id*., at ¶ 3.

16       The class notice also provided that class members could opt out of the class for

17  the purpose of pursuing their own individual compensatory services via a separate

18  action in lieu of receiving the compensatory education package available to Eligible

19  Class Members, but stated that class members had to mail a letter to one member of

20  the Class Counsel team by the opt out cut-off date listed in the Notice for the opt out

21  to be effective.[3]  SA at ¶ 63.  Class Counsel has not received any opt out letters to date.

22  If Class Counsel receives an opt out letter on or prior to May 18, as to those class

23  members receiving a second notice due to the first being returned as undeliverable, the

24  ────────────────

25       [3]The Settlement Agreement and the approved Class Notice carefully describe the special
     education claims that are waived by this matter, and specifically exclude claims for what are known

26  as "related services" under IDEA.  Related services, such as speech and language services, are not
     addressed by the Compensatory Service Package and are therefore not released by the Settlement

27  Agreement.  Accordingly, class members are not precluded from bringing individual actions for
     compensatory education on these issues, even if they chose not to opt out of the Compensatory

28  Service Package portion of the settlement.  SA at ¶¶ 82-83.

Court will be notified on May 20.  Sapp Decl. at ¶¶ 3-7.

Class Counsel David Sapp, whose name and contact information was included on the class notice, also received calls from approximately 31 class members during the class notice period with questions about the class notice, the settlement itself, or the process for receiving compensatory education services.  *See id.* at ¶¶ 9-10.  He kept a log of the calls received and answered all such questions, except when the caller was a monolingual Spanish speaker, in which case a paralegal working under his direction answered the questions.  *See id.*  Among the calls received, several callers expressed support for the settlement after Mr. Sapp further explained its terms.  For example, one class member stated, "Free tutoring!  Sign me up, that's what I need," and another stated, "That's really good.  Thanks," after Mr. Sapp provided a standard summary of the settlement terms.  At least two parents with whom Mr. Sapp spoke thanked Class Counsel for bringing the case and stated that the services would be good for students like their children who had been detained at Challenger.  *Id.*, at ¶ 11.

## V.     The Class Settlement Should be Approved and the Class Certified

Settlement of class action suits is encouraged by the courts, because of the complexity, uncertainties of outcome, difficulty of proof, expense, and the substantial judicial resources that can be conserved by avoiding formal litigation.  *See In re General Motors Corp. Pick-up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3rd Cir. 1995); Newberg & Conte, Newberg on Class Actions, 4th ed. §§ 11.41, 11.4 (2009); *DeSimone v. Industrial Bio-Test Labs, Inc.*, 83 FRD 615 (S.D.N.Y. 1979).

According to FRCP 23(e)(2), "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate."  In addition, the Ninth Circuit has set forth the following factors for a district court to consider in determining the fairness of a settlement at final approval: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout

the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of the counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998).

Here, the proposed settlement is manifestly reasonable, adequate, and fair, as Defendants have agreed to substantial and significant reforms in every area related to the allegations in the complaints, as well as the additional areas of reform identified in the 2010 Expert Team Report. They have also agreed to a comprehensive monitoring and implementation regime and to provide significant compensatory relief for the class. As such, the Settlement Agreement should be approved.

   A. The Amount Offered in Settlement Compared to Strength of Plaintiffs'
      Case and Risk of Further Litigation.

   "Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in the settlement. . . . They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) (internal citation omitted).

   As discussed in the preliminary approval motion, Plaintiffs believe that they would have prevailed at trial given the strong evidence of constitutionally and statutorily insufficient educational and rehabilitative programs at Camp Challenger and the 2010 Review Team Report, which wholly confirmed Plaintiffs' allegations. Parks Prelim. Approv. Decl. at ¶ 46 (Dkt. No. 60, Attach. #1). Nevertheless, in Class Counsel's estimation, the injunctive relief in the parties' settlement may exceed that which the Court would have ordered following a trial on the merits, particularly given the scope and detail of relief, and the involvement of leading experts. The parties thus recognized that there was much more to be gained through reasonable settlement discussions than through continued litigation and trial in this matter. *Id.,* at ¶ 47.

Furthermore, while disagreeing on the merits of the individual cases, the parties agree that it would be expensive and time-consuming to litigate this case through trial, that the outcome of a trial is uncertain, and that resolution of this action through settlement is appropriate. *Id.* at ¶ 48. Moreover, such a trial is unnecessary where Defendants have agreed to the relief that Plaintiffs seek. *Id.*

Class counsel believe that this class settlement is both fair and reasonable for all parties and that, if approved, this settlement will result in sweeping improvements for youth detained at Camp Challenger presently and in the future, as well as provide significant compensatory services to eligible class members. *Id.* at ¶ 49. The Settlement Agreement is the result of substantial pre-filing investigation by Class Counsel, considerable negotiations, and tremendous effort invested by all parties to ensure that Defendants reform the education at Camp Challenger. *Id.* In Class Counsel's opinion, this settlement will establish the necessary systemic reforms at Camp Challenger to ensure that detained youth receive educational and rehabilitative programs that meet constitutional and statutory standards. *Id.*

With respect to compensatory education, Class Members had the option either to participate in the services or to opt out and pursue their own claims. None of the class members have chosen to opt out as of the date of this filing, further confirming that the relief obtained is of substantial benefit to the class members. Counsel further protected the class members by specifically excluding from the class release those special education claims and services that are not addressed by the compensatory education package offered to class members under the settlement. *Id.*

### B. The Settlement is Fair, Adequate, and Reasonable Given the Information Obtained and the Quality of the Settlement Negotiations.

Although "extensive formal discovery ha[s] not been completed . . . 'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Financial Corp. Securities Litigation*, 213 F.

1  3d 454, 459 (9th Cir. 2000) (internal citations omitted) (quoting *Linney v. Cellular*
2  *Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

3       Here, prior to reaching settlement, the parties retained a team of nationally
4  recognized experts, with extensive experience establishing and maintaining effective
5  educational and rehabilitative programs within juvenile detention settings, to assess
6  the programs at Camp Challenger and provide recommendations for necessary
7  improvements.  This process led to exceptionally informed settlement negotiations.
8  The thorough findings and report provided by the experts and other information
9  obtained during negotiations informed the terms of the proposed settlement.

10       C. Counsel Believe That This Is an Exceptional Settlement

11       The Ninth Circuit has recognized that "[p]arties represented by competent
12  counsel are better positioned than courts to produce a settlement that fairly reflects
13  each party's expected outcome in litigation." *In re Pacific Enterprises Securities*
14  *Litigation*, 47 F. 3d 373, 378 (9th Cir. 1995).  Class settlements reached in arms-
15  length negotiations between experienced, capable counsel after meaningful discovery
16  are presumed correct. *Manual for Complex Litigation,* §30.42 (3rd ed. 1995).  In this
17  case, as discussed previously, Plaintiffs are represented by a coalition of leading
18  public interest organizations.  Defendants are well represented by County and
19  LACOE attorneys.  Furthermore, the parties negotiated an arms-length settlement in a
20  cordial yet adversarial manner for almost a year prior to reaching an agreement. *See*
21  *generally* Parks Prelim. Approv. Decl. (Dkt. No. 60, Attach. #1).  In sum, the
22  experience of counsel and the nature and quality of their negotiations weigh greatly
23  in favor of approval.

24       D. Settlement Will Conserve Resources for the Government Defendants.

25       To the extent this factor is significant, LACOE and Probation are
26  governmental entities and are utilizing limited public resources.  This Settlement
27  preserves those public resources, properly balances Defendants' concerns with the
28  interests of the Class, avoids the time and expense of further litigation, and results in

14

1   a benefit to the public as a whole.

2       E. Reaction of Class Members to the Proposed Settlements.

3       The named Plaintiffs were apprised of the progress of the negotiations and the
4   proposed terms of the settlements, and all approved of the Settlement Agreement.
5   Parks Prelim. Approv. Decl. at ¶ 29; Declaration of Leticia Lopez (Lopez Decl.) in
6   Support of Preliminary Approval ¶ 12 (Dkt. No. 60, Attach. #11). Class notice was
7   mailed to 3,915 class members, and from reading the transcriptions, Class Counsel
8   believe that only one objection was received. Sapp Decl. at ¶¶ 5-8; Parks Final
9   Approv. Decl. at ¶ 3, 4 & Exh. A. As to the individual who objected, it was on the
10  grounds that she wanted her son to receive as much in compensatory services as the
11  Named Plaintiffs and also wanted her son to receive damages. In addition to the fact
12  that increased individual award amounts for Named Plaintiffs are appropriate in cases
13  like this, *see* Section V.F.1.iv, *infra*, Named Plaintiffs' compensatory service
14  packages are higher because they waived all of their special education claims,
15  including those for related services, after completing the administrative process under
16  the Individuals with Disabilities Education Act (IDEA). *See J.G. v. Douglas County*
17  *School Dist.*, 552 F.3d 786, 802 (9th Cir. 2008) (discussing the administrative process
18  related to IDEA claims). Here, class members, like Ms. AG's son, are <u>still entitled</u> to
19  bring an action for the denial of related services and can bring a separate action for
20  damages, as such claims were not waived as a part of the Settlement Agreement. As
21  such, Ms. AG can, assuming the statute of limitations has not run, pursue any of these
22  claims to obtain additional relief for her son. Counterbalancing Ms. AG's objection,
23  several class members who called Class Counsel expressed their gratitude regarding
24  the nature of the settlement and the relief obtained. Sapp Decl., at ¶ 11.

25      F. Final Certification of the Class is Appropriate.

26      On March 16, 2011, the Court conditionally certified the class of "[a]ll youth
27  who were detained at Challenger Memorial Youth Center at any point between
28  January 12, 2008 and November 8, 2010" under Rule 23(b)(2), finding that plaintiffs

had established the four prerequisites of Fed. R. Civ. P. 23(a) and at least one of the
alternative requirements of Fed. R. Civ. P 23(b). *Valentino v. Carter-Wallace, Inc.,*
97 F.3d 1227, 1234 (9th Cir. 1996); *see* FAC at ¶ 39.   For the reasons previously
argued in Plaintiffs' Motion for Preliminary Approval and summarized herein, the
Court should grant Class Counsels' motion for certification of the settlement class.

### 1. *Plaintiffs Satisfy the Requirements of Rule 23(a).*

#### i.   Numerosity

Numerosity is satisfied if joinder of all class members would be
"impracticable." *See* Fed. Civ. P. 23(a)(1).  Here, the class consists of approximately
3,616 youth who were detained at Camp Challenger between January 8, 2008 and
November 8, 2010. Gores Decl., at ¶4; Granbo Decl., at ¶ 2.  This number is
sufficiently large to make joinder impracticable. *See* 1 Conte & Newberg, *Newberg
on Class Actions* §3.5 (4th ed. 2009) (suggesting class of 40 or greater should meet
the test of Rule 23(a)(1) on that fact alone); *Cox v. American Cast Iron Pipe Co.*, 784
F.2d 1546, 1553 (11th Cir. 1986) (same). Thus, Plaintiffs easily satisfy the
numerosity requirement.

#### ii.   Commonality

Rule 23(a)(2) requires that there be either questions of fact or law common to
the members of the proposed class.  "All questions of fact and law need not be
common to satisfy [Rule 23(a)(2)].  The existence of shared legal issues with
divergent factual predicates is sufficient . . . ." *Hanlon*, 150 F.3d at 1019.
Commonality may be satisfied in cases like this where plaintiffs challenge a system-
wide practice or policy that affects all class members. *Armstrong v. Davis*, 275 F.3d
849, 868 (9th Cir. 2001) (citing *La Duke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir.
1985)). Additionally, Plaintiffs' class action seeks declaratory and injunctive relief,
which as many courts have noted generally are considered to present common
questions. *See, e.g., Baby Neal for & by Kanter v. Casey* , 43 F.3d 48, 57 (3rd Cir.

1 1994) ("[I]njunctive actions by their very nature often present common questions.").[4]

2 Finally, the need for an individualized determination regarding the amount of

3 compensatory relief to be provided through an established formula does not mean

4 that individual facts predominate. *See, e.g. Sav-On Drug Stores, Inc. v. Superior*

5 *Court* 34 Cal. 4th 319, 333, 340 (2004) (affirming certification of class of drug store

6 "managers" and "assistants" seeking overtime pay and stating that "the necessity for

7 class members to individually establish eligibility and damages does not mean

8 individual fact questions predominate").

9     Here, the class members share common questions of fact and law concerning

10 the educational and rehabilitative services they were provided or not provided by the

11 Defendants. FAC at ¶¶ 53, 73-83. Class members also share common questions of

12 law concerning the legality of Defendants' policies and practices regarding the

13 educational and rehabilitative programs at Camp Challenger and whether they violate

14 federal and state constitutional provisions and statutes. *See id.* at ¶¶ 136-165. Those

15 common questions are sufficient to establish commonality. *See Armstrong*, 275 F.3d

16 at 869 (certifying class of prisoners and parolees with sight, hearing, learning,

17 developmental and mobility disabilities); *Handberry v. Thompson*, 446 F.3d 335, 347

18 (2nd Cir. 2006) (certifying special education class of "all inmates under the age of

19 twenty-one in the custody of the New York City Department of Correction who have

20 not yet received their high school diploma or its equivalent").

21              iii.    Typicality

22     Under Rule 23(a)(3), Named Plaintiffs' claims are typical because they "stem[]

23 _____

24 [4]The Class's compensatory education relief is  similarly equitable in nature. Compensatory
education services are essentially in-kind services needed to make up for past educational failures.
25 *See, e.g., Park, ex rel. Park v. Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1033 (9th Cir. 2006)
("Compensatory education services can be awarded as appropriate equitable relief."); *Blake C. ex
26 rel. Tina F. v. Department of Educ., State of Hawaii*, 593 F.Supp.2d 1199, 1208 (D. Hawai'i 2009)
(noting court has "broad discretion" to fashion appropriate equitable relief, including compensatory
27 education).

28

from the same event, practice or course of conduct that forms the basis of the class
claims and [are] based upon the same legal or remedial theory." *Jordan v. County of
Los Angeles*, 669 F. 2d 1311, 1320 (9th Cir. 1982), *vacated on other grounds,* 459 U.S.
810 (1982). All three of the Named Plaintiffs are youth who were detained at Camp
Challenger and experienced the constitutionally insufficient educational and
rehabilitative programs provided by Defendants. Named Plaintiffs, like the proposed
settlement class, allege violations of federal and state laws based on Defendants'
failure to (1) provide constitutionally sufficient educational and rehabilitative
programs to youth detained at Camp Challenger; (2) enforce and adopt appropriate
policies and procedures to ensure legally mandated educational and rehabilitative
services; and (3) ensure that Defendants' employees who worked with detained youth
were appropriately trained and/or supervised regarding the educational and
constitutional rights of youth at Camp Challenger. FAC at ¶¶ 54-59, 64-65, 68-88.
All three Plaintiffs are also special education students who allege the failure to
provide special education. FAC at ¶¶ 30-32. Accordingly, the typicality requirement
is satisfied.

            iv.     Adequate Representation by Plaintiffs and Class Counsel

Lastly, Rule 23(a) requires that the representative parties must fairly and
adequately protect the interests of the class. "Adequacy of representation depends on
the qualifications of counsel for the representatives, an absence of antagonism, a
sharing of interests between the representatives and the absentees, and the
unlikelihood that the suit is collusive." *In re Northern District of California, Dalkon
Shield, IUD Prods. Liab.Litig.*, 693 F. 2d 847, 855 (9th Cir. 1982). Here, Plaintiffs
share the proposed class' common interest in improving the educational and
rehabilitative programs at Camp Challenger. Lopez Decl. at ¶¶ 7-12. Plaintiffs'
individual pursuit of compensatory services and/or damages for their alleged injuries
has not affected and will not interfere with the parties' pursuit of a class-wide
declaratory and injunctive relief. *Id.* at ¶ 11.

18

Although the Named Plaintiffs' compensatory education packages are higher than what they would receive under Dr. Leone's formula, it is not unusual for named plaintiffs to receive [their awards are not "slightly" higher here] higher awards in light of their direct participation in the lawsuit. *See, e.g., Singer v. Becton Dickinson and Co.,* 2010 WL 2196104 at *9 (S.D. Cal. 2010) (noting, in damages case, that courts look to risk to class representative and notoriety and personal difficulties encountered by class representative, among other factors, in evaluating enhanced award); *see also* Lopez Decl., at ¶¶10-11 (explaining work involved as class representative). This is particularly true here, because Named Plaintiffs completed the administrative process for their special education claims and completed various assessments to determine the extent and scope of their educational needs. Moreover, in receiving such awards, Named Plaintiffs waived all of their special education claims, whereas the class members still retain their related services claims.

Plaintiffs are represented by some of Southern California's preeminent public interest organizations: Public Counsel, Disability Rights Legal Center (DRLC), ACLU Foundation of Southern California (ACLU-SC), and the American Civil Liberties Union Foundation National Legal Department (ACLU National). Each of these organizations has extensive experience in actions such as this. *See* Declarations of Shawna L. Parks, Laura Faer, Benjamin Conway, Mark Rosenbaum, and Larry M. Schwartztol. Plaintiffs and their counsel thus have and will adequately and fairly represent the interests of the class.

G. <u>Certification Under Rule 23(b)(2) is Appropriate.</u>

Plaintiffs move for class certification under Rule 23(b)(2), which is satisfied when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. . . ." Fed. R. Civ. P. 23(b)(2). Plaintiffs seek injunctive and declaratory relief to rectify Defendants' failure to provide youth detained at Camp Challenger with legally sufficient

1  educational and rehabilitative programs, thus generally violating the constitutional and
2  statutory rights of the class members. *See* FAC generally. Suits brought to vindicate
3  civil rights are exactly the type of suits for which Rule 23(b)(2) was designed. *See*
4  *Comer v. Cisneros,* 37 F.3d. 775, 796 (2d Cir. 1994) ("[D]iscrimination cases for
5  injunctions against state or local officials are the 'paradigm' of [Rule 23(b)(2)]
6  cases."). Because Defendants' alleged conduct is applicable to the proposed class,
7  making declaratory and injunctive relief appropriate as to the class as a whole,
8  Plaintiffs have satisfied Rule 23(b)(2),[5] and the court should grant final certification of
9  the settlement class.

10 **VI. Class Counsel's Requested Attorney's Fees Should Be Approved**

11     Under Rule 23(h) of the Federal Rules of Civil Procedure, Class Counsel also
12 request approval of the negotiated settlement award for reasonable attorney's fees
13 and costs in the amount of $325,000 for work performed on this case to date. It is
14 well-settled that a plaintiff who prevails in a civil rights action should ordinarily
15 recover reasonable attorney's fees, *see, e.g., Hensley v. Eckerhart,* 461 U.S. 424
16 (1983) (applying 42 U.S.C.A. § 1988). Plaintiffs' brought legal claims under
17 numerous statutory provisions that authorize an award of reasonable attorney's fees
18 and costs to prevailing plaintiffs, *see* 20 U.S.C. 1415(i)(3)(B) (authorizing award of
19 reasonable attorneys' fees to prevailing party in action under IDEA); 42 U.S.C.A. §
20 1988 (authorizing attorney's fees award to prevailing party in civil rights lawsuit);

21

22

23    [5] A district court's discretion to require notice and the opportunity to opt-out in a Rule
      23(b)(2) action is also well established. *See In re Monumental Life Ins. Co.,* 365 F.3d 408, 417
24    (5th Cir. 2004); *Molski v. Gleitch,* 318 F.3d 937,951 n. 16 (9th Cir. 2003) *overruled on other
      grounds by Dukes,* 603 F.3d at 617; *Robinson v. Metro-North Commuter R.R. Co.,* 267 F.3d 147,
25    165-67 (2d Cir. 2001); *Crawford v. Honig,* 37 F.3d 485, 487 n.2 (9th Cir. 1994); *Dukes v. Wal-Mart
      Stores, Inc.* 603 F.3d 571, 621 (9th Cir. 2010) (remanding for determination regarding whether
26    damages predominated such that 23(b)(2) certification was inappropriate, but stating that opt out
      provisions are appropriate in 23(b)(2) class actions). Although opt out provisions are typically
27    provided for damages claims in 23(b)(2) actions, as this Court recognized when it conditionally
      certified the class, opt outs are also appropriate for that component of the equitable relief that is
28    individualized in nature, i.e., compensatory education.

1  Cal. Code Civ. Proc. § 1021.5 (authorizing attorney's fees award to prevailing party
2  in suit involving important right affecting public interest).

3      Plaintiffs plainly are the "prevailing party" here, because they secured a
4  substantial and important settlement agreement, enforceable in and by this Court. *See*
5  *Barrios v. California Interscholastic Federation*, 277 F.3d 1128, 1134 (9th Cir. 2002)
6  (recognizing party prevails by obtaining enforceable judgment, consent decree, or
7  judicially enforceable settlement agreement). Furthermore, the $325,000 figure
8  reached in the Settlement Agreement is fair and reasonable and should be approved.
9  Plaintiffs' lodestar in this case, which is the reasonable number of spent hours
10 multiplied by a reasonable hourly rate for each attorney who worked on the case, is
11 $790,939 through May 4, 2011. Plaintiffs' costs are $2,160.99. Thus, the $325,000
12 in fees is only 41% of Class Counsel's actual lodestar.

13     A. The Negotiated Award is Reasonable under the Lodestar Approach.

14     The starting point for computation of attorneys' fees in civil rights cases is the
15 "lodestar" arrived at by multiplying the number of hours reasonably expended by the
16 reasonable hourly rates. *See Hensely*, 461 U.S. at 433. The "resulting product is
17 presumed to be the reasonable fee to which counsel is entitled." *Pennsylvania v.*
18 *Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (internal
19 quotations omitted). Where, as here, Plaintiffs obtained substantial results, the
20 "attorney should recover a fully compensatory fee . . . encompass[ing] all hours
21 reasonably expended on the litigation. . . ." *Hensley*, 461 U.S. at 435.

22         *1. The Number of Hours Are Reasonable*

23     Here, Class Counsel expended 1,917.01 hours on this matter, which is
24 documented in the detailed billing records in the declarations filed with this motion.
25 Parks Final Approv. Decl., at ¶ 18, Conway Decl., at ¶ 24, Rosenbaum Decl., at ¶ 16,
26 Schwartztol Decl., at ¶¶ 9, 10. These hours were reasonable and necessary to the
27 successful litigation of this case on behalf of Plaintiffs and the Settlement Class,

28

1  particularly given the significance and complexity of the matters at issue and

2  comprehensive and historic settlement agreement achieved.

3                        *2. The Hourly Rates Are Reasonable*

4        Both the California Supreme Court and the United States Supreme Court have

5  specifically held that fee awards to public interest attorneys who do not charge their

6  clients (such as Class counsel here) must be based on the prevailing billing rates of

7  attorneys in private practice with similar skills and experience. *See Blum v. Stenson*,

8  465 U.S. 886, 895, 104 S. Ct. 1541, 1547 (1984) (holding that the legislative history

9  of the civil rights statutes required that hourly rates for public interest attorneys equal

10  prevailing private market rates); *Serrano v. Unruh*, 32 Cal. 3d 621, 640-44 (1982).

11  The reasonable rate is derived from the reasonable market value of their services in

12  the community, *Blum v. Stenson,* 465 U.S. at 895 n.11; *Ketchum v. Moses,* 24 Cal.

13  4th 1122, 1132 (2001), and is based on current, rather than historic, hourly rates for

14  Plaintiffs' attorneys, *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

15        Plaintiffs' lodestar in this matter is comprised of the time of the Disability

16  Rights Legal Center, Public Counsel Law Center, the ACLU of Southern California,

17  and ACLU National.  Class Counsel specialize in civil rights and/or disability rights

18  litigation and are extremely well qualified and competent in this field. *See generally*

19  Declarations of Shawna Parks, Mark Rosenbaum, Laurence M. Schwartztol, and

20  Benjamin Conway.  Class Counsel have submitted documentation that the hourly

21  rates used to compute their lodestar are their customary, current hourly rates.  For

22  example Shawna Parks, the lead Disability Rights Law Center (DRLC) attorney for

23  this matter, bills at a rate of $525 per hour.  Ms. Parks, DRLC's Litigation Director,

24  has successfully litigated a multitude of cases, served a class counsel in a number of

25  settled and ongoing class actions, has extensive experience in the substantive areas of

26  disability rights and special education, and has been practicing law since 1999; her

27  rate has already been approved twice in the Central District. *See* Parks Final Approv.

28  Decl., at ¶¶ 8, 9, 11, 13, Exs. B (resume), E & F (*Lauderdale v. City of Long Beach*,

1 Case No. CV08-00979 ABC (JWFx) (approving DRLC rates generally); and

2 *Riverside County Department of Mental Health v. A.S.*, Case No. CV08-00511 SGL

3 (RCx)(approving DRLC rates generally)).

4      The hourly rates requested by Class counsel are comfortably within the rates

5 charged by skilled counsel in the Southern California market in similar complex civil

6 litigation. Declarations regarding the prevailing market rate in the relevant

7 community are sufficient to establish a reasonable hourly rate. *See Widrig v. Apfel*,

8 140 F. 3d 1207, 1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians & Gynecologists*

9 *v. Ada*, 100 F. 3d 691, 696 (9th Cir. 1996), *cert. denied*, 522 U.S. 949 (1997). The

10 rates requested are reasonable as measured by the rates charged by attorneys of

11 comparable experience and skill in the Los Angeles area. Plaintiffs have provided

12 representative declarations of local attorneys which establish that rates for plaintiffs'

13 counsel are well within the prevailing hourly rates of other civil rights litigation firms.

14 *See* Decls. of Barrett S. Litt (Litt Decl.), Dan Stormer (Stormer Decl.), and Laurence

15 W. Paradis (Paradis Decl.) filed herewith.

16      For example, O'Melveny & Meyers charge rates higher than those requested

17 here. *See* Litt Decl., at ¶ 21. In 2008, O'Melveny & Meyers charged, *inter alia*, $450

18 per hour for a 2005 associate and $675 for a 1994 partner. *Id*. Class Counsel's rates

19 are generally less than rates charged by multiple firms that practice in Los Angeles

20 County, including but not limited to Skadden Arps, Kirkland & Ellis, Morrison &

21 Foerster, and White and Case. *Id*., at ¶ 22. In addition, Plaintiffs' Counsel's rates are

22 comparable to those charged by Disability Rights Advocates ("DRA"), a nonprofit

23 that engages in similar work and whose rates have been approved on multiple

24 occasions by federal and state courts in Southern and Northern California. Paradis

25 Decl., at ¶¶ 15, 16. DRA charges $575 for 2003 graduates and $545 for 2004

26 graduates. *See* Paradis Decl. Ex. 1; *see also Housing Rights Center v. Sterling*, 2005

27 WL 332078 *2 (C.D. Cal. 2005) (awarding the Howrey firm its usual rates, and

28 agreeing with expert, who stated that he saw "rates between $125 and $1,000 per

1   hour and that he sees rates between $125 and $650 per hour in California on a regular

2   basis"). In light of the above, and as set forth below and in the supporting

3   declarations, Class Counsel's rates are reasonable and well-justified.

4        B. <u>The Attorney's Fees Award Required Under the Settlement Is Reasonable</u>

5        The lodestar for Class Counsel – the number of hours reasonably expended on

6   this case times the reasonable hourly rate for each billing professional – is $790,939.

7   The Settlement Agreement, however, provides that Defendants will pay Class

8   Counsel only $325,000.00 in attorney's fees. This represents a substantial discount –

9   59% – from the actual lodestar, to which Plaintiffs' Counsel would ordinarily be

10   entitled. As such, the attorney's fees provided to Class Counsel under the Settlement

11   Agreement are more than reasonable. Accordingly, the Court should approve the

12   amount agreed upon in the settlement of $325,000 for attorneys' fees and costs,

13   pursuant to Rule 23(h) of the Federal Rules of Civil Procedure.

14   **VII. Conclusion**

15        For the above reasons, the parties respectfully request that this Court grant

16   Class Counsels' motion.

17   DATED:  May 9, 2011            PUBLIC COUNSEL LAW CENTER

18

19                           DISABILITY RIGHTS LEGALCENTER

20                           ACLU FOUNDATION OF SOUTHERN

21                           CALIFORNIA

22                           AMERICAN CIVIL LIBERTIES UNION,

23                           NATIONAL LEGAL DEPARTMENT

24             By: _____ /s/ _____

25                           Laura Faer
                         Public Counsel Law Center

26

27                           Attorneys for Plaintiffs
                         and the Plaintiff Class

28